DECISION AND JUDGMENT ENTRY
This is an appeal from the judgment of the Lucas County Court of Common Pleas which found appellant, John Moore, to be a sexual predator. For the reasons that follow, we affirm the decision of the trial court.
Appellant pled guilty and was convicted of four counts of rape in violation of R.C. 2907.02(A)(1)(b), felonies of the first degree. Appellant's convictions arose as a result of his four year molestation of his daughter between the ages of five and nine. On September 18, 2000, the trial court sentenced appellant to nine years imprisonment on each of the four counts of rape, to be run concurrently. The trial court held a hearing, on September 21, 2000, pursuant to R.C. 2950.09(B)(1), to determine whether appellant was a sexual predator. On September 26, 2000, the trial court entered judgment finding appellant to be a sexual predator, as defined by R.C. 2950.01(E).
Appellant appeals the decision of the trial court and raises the following sole assignment of error:
 "THE TRIAL COURT'S DETERMINATION THAT DEFENDANT-APPELLANT IS A SEXUAL PREDATOR IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE."
Specifically, appellant argues that nothing in the record supports the trial court's conclusion that appellant is a sexual predator. Rather, appellant asserts that the only evidence regarding the likelihood of his reoffending was that of Dr. Jon Pansky of the Court Diagnostic and Treatment Center, who testified that appellant was at a low risk of recidivism, and recommended that appellant be classified as a "sexually oriented offender," rather than a "sexual predator."
R.C. 2950.09(A) states that a person who has been convicted of or pleaded guilty to a sexually oriented offense may be classified as a sexual predator. R.C. 2950.09(B)(1) requires the trial court to conduct a hearing to determine appellant's status. The trial court must determine by clear and convincing evidence whether appellant is a sexual predator.[1] The standard of clear and convincing evidence is as follows:
 "'[T]hat measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'"[2]
In reviewing a trial court's decision purportedly founded upon this degree of proof, an appellate court must examine the record to determine whether the evidence satisfies the clear and convincing standard.[3]
R.C. 2950.01(E) defines "sexual predator" as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." In determining whether appellant is a sexual predator, pursuant to R.C. 2950.09(B)(2), the trial court must consider all relevant factors, including, but not limited to, all of the following:
"(a) The offender's age;
 "(b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 "(d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 "(e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 "(f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 "(g) Any mental illness or mental disability of the offender;
 "(h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 "(i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 "(j) Any additional behavioral characteristics that contribute to the offender's conduct."
At the hearing, Dr. Pansky testified that he interviewed and evaluated appellant to assist the court in determining appellant's classification. Dr. Pansky administered two tests to determine appellant's likelihood of reoffending, the Minnesota Multiphasic Personality Inventory test ("MMPI-2") and the Static 99. The MMPI-2 was invalid because of the number of questions appellant failed to answer. With respect to the Static 99, Dr. Pansky testified that after inserting information he knew about appellant, the results came back that appellant was at a low risk for recidivism.
Dr. Pansky testified that factors shown to be correlated with high recidivism rates for sex offenders included the following: previous sex offense convictions; male victims; young offenders, early to mid-twenties; and a history of violence. Dr. Pansky testified that none of these factors were present in appellant's case.
Dr. Pansky also looked at "dynamic factors" in evaluating appellant, which included the existence of sexual deviance prior to the offense actually occurring and a history of criminal behavior or psychopathy. He found no dynamic factors present with appellant.
Dr. Pansky testified that he only provisionally diagnosed appellant as a pedophile because appellant denied that he actually committed the crime and only pled guilty on advice of his attorney. When asked by the trial court whether he accepted as true appellant's denial of the allegations, Dr. Pansky testified that he did to a certain extent; however, he realized that "in terms of legal considerations by taking that plea, he then is viewed as guilty."
Dr. Pansky was not concerned that appellant denied his behavior during the interview with him because many offenders deny their actions. Dr. Pansky also testified that the following matters did not affect his opinion of whether appellant was likely to reoffend: the fact that appellant was abused as a child; the fact that his brother was incarcerated for sexually deviant behavior; the fact that appellant denied the charges and blamed his ex-wife for making up the allegations; the fact that he depicted his daughter as a liar; the fact that he offered some "farfetched" explanations for why his daughter knew about certain sexually related matter; or the fact that appellant was defensive during his evaluation. Additionally, although he classified appellant as having narcissistic behavior, which meant he only thought of his own needs at a particular time and did not think of the impact on others, Dr. Pansky testified that because "most offenders demonstrate that kind of quality," that fact did not affect appellant's likelihood of recidivism.
When asked if he considered the factors set forth in R.C. 2950.09(B)(2) in his evaluation of appellant, Dr. Pansky testified:
 "Well, I certainly considered them. The ____the difficulty is that many of those factors that have been identified and that I believe are to be considered by the Court in terms of classification don't necessarily agree with what the current research is showing.
"* * *
 "So things that are listed as factors under that may not necessarily be significant in terms of predicting risk. But, I consider them certainly and I do give attention to them."
Dr. Pansky testified that, as an incest offender, appellant had a twelve to fifteen percent risk of reoffending. In order to consider appellant to be likely to reoffend, Dr. Pansky testified that he would need to find that appellant would have at least a fifty-one percent risk of reoffending. As such, Dr. Pansky recommended a sexually oriented offender classification.
In rendering its decision, the trial court took the following facts into consideration in making its determination. Appellant pled guilty to four counts of rape of his daughter, who was nine years old at the time of the hearing. Appellant's criminal activity began when his daughter was five years old and continued for over four years. The victim estimated that appellant raped her over one hundred times. When the victim told appellant she no longer wanted to engage in this activity, appellant told her that "she had to so she can learn how to do this so she can do it when she grows up." Appellant also threatened to hurt her, ground her for a month, or spank her with a belt if she told anyone.
Appellant admitted under oath at the time of his guilty pleas that he repeatedly raped his daughter for several years, but denied such activity when interviewed by the presentence writer and Dr. Pansky. Appellant stated that his daughter sometimes had a problem with lying and offered farfetched reasons for the victim being able to describe certain things of a sexual nature.
The Static 99 placed appellant within the low risk category for potential sex offense recidivism. The trial court, however, criticized Dr. Pansky's factual assumptions upon which he relied in rendering his decision regarding appellant's risk of recidivism and noted that the testing results of appellant and Dr. Pansky's evaluation were intertwined with the fact that appellant denied that he had committed any criminal acts on his daughter.
With respect to whether appellant was likely to engage in the future in one or more sexually oriented offenses, the trial court stated the following:
 "In the case sub judice, the crimes involved the repeated molestation of a very young child, `a category of victims most easily exploited by acts of sexual abuse because of their relative defenselessness, the likelihood of recidivism is increased. * * * The strength of the compulsion can be assessed by the length of time [the defendant] engaged in the acts of molestation. The [defendant] violated deeply ingrained and powerful social prohibitions against both incest and sexual relations with young children * * *'. State v. Ferguson
(Mar. 31, 1998), Franklin App. No. 97APA06-858, unreported at p. 3.
 "It is also important to note that the victim, in the case sub judice, was five years old when the defendant began to molest her. This illegal conduct was repeatedly committed, not for one month nor for one year. It continued for over four years. The defendant did not cease his violence upon the little child when the child asked him to stop. The defendant displayed cruelty to the victim by threatening her and continuing to molest her. It was not until the small child told her baby sitter and the matter was reported to the police that the molestation stopped.
 "The evidence further establishes that the defendant's repeated molestation of his little daughter over a four year period serves as a telling indicator of the depths of
 defendant's inability to refrain from such illegal conduct. And, as previously noted, a trier of fact may look at past behavior in determining future propensity because past behavior is often an important indicator for future propensity. In the case sub judice, the repeated molestation by the defendant over a four year period, further demonstrates that the risk of recidivism must be viewed as considerable. Relative to the risk of recidivism, the Court further must note the defendant's refusal to admit his deviant behavior to the mental health professionals is a serious indicator that the defendant is not amenable to treatment, thus reducing the possibility of rehabilitation.
 "Additionally, the evidence establishes that the defendant was approximately twenty-six years old at the time he commenced to rape his daughter. The defendant was certainly old enough to appreciate the nature of his conduct. Lastly, the nature of the defendant's behavior was exploitative, in that he used the trust placed in him by virtue of his relationship with the victim's mother to isolate his victim and repeatedly rape her during her visitation with her father."
Accordingly, it is clear that the trial court considered the factors in R.C. 2950.09(B)(2), and found the following were significant in determining appellant's likelihood of recidivism: appellant's age; the victim's age; the nature of appellant's sexual conduct, which was incest; the pattern of sexual abuse; and the threats of cruelty. In addition to those enumerated factors, the trial court also considered significant the following: the abuse was for an extended period of time; appellant did not stop the abuse of his own accord, demonstrating an inability to refrain from such illegal conduct; and appellant denied culpability to health care professionals, which "is a serious indicator that the defendant is not amenable to treatment, thus reducing the possibility of rehabilitation."
We find that the opinion testimony of Dr. Pansky is only one of the factors the trial court can consider in determining whether appellant is likely to engage in future sexually oriented offenses.[4] Based on the totality of the circumstances and the evidence presented, we find that the trial court was justified in finding appellant was proven to be a sexual predator by clear and convincing evidence.
Accordingly, we find appellant's sole assignment of error not well-taken. The judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
 JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J.
Melvin L. Resnick, J., Richard W. Knepper, J., JUDGES CONCUR.
[1] R.C. 2950.09(B)(3).
[2] State v. Schiebel (1990), 55 Ohio St.3d 71, 74, citing Cross v.Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
[3] Id.
[4] See State v. Hendricks (June 28, 2001), Franklin App. No. 00AP-1374, unreported.